BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

JUN − 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| PHILLIP L. COCHRAN<br>P.O. Box 7341<br>Abilene, Texas 79608<br><br>    Plaintiff,<br><br>v.<br><br>ALBERTO GONZALES,<br>ATTORNEY GENERAL,<br>U.S. DEPARTMENT OF JUSTICE,<br>(in his official capacity)<br>950 Pennsylvania Ave., N.W.<br>Washington, D.C. 20530<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.

CASE NUMBER  1:06CV01069

JUDGE: Paul L. Friedman

DECK TYPE: Employment Discrimination

DATE STAMP: 06/09/2006

*JURY ACTION*

## COMPLAINT

1. This is a complaint alleging violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*

2. Plaintiff Phillip Cochran suffered discrimination in violation of the Rehabilitation Act of 1973 when his employer, the United States Marshals Service ("USMS"), constructively discharged him by forcing him to take an involuntary disability retirement because of his hearing loss without considering reasonable accommodation and by refusing to reinstate him when the USMS policy changed allowing for reasonable accommodation of his disability. Plaintiff Cochran seeks injunctive relief, back pay, reinstatement or front pay in lieu of reinstatement, compensatory damages and attorney fees and costs as provided by Section 505 of the Rehabilitation Act, 29 U.S.C. §794(a).

## I. <u>JURISDICTION</u>

3.      This civil action is brought under the Rehabilitation Act of 1973, 29 U.S.C. § 791

*et seq.*  This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 & 1343.  Venue

is appropriate in this Court pursuant to 28 U.S.C. §1391(e).

## II. <u>PARTIES</u>

4.      Plaintiff Phillip Cochran, a resident of Abeline, Texas, served as a Deputy U.S.

Marshal with the United States Marshals Service, a federal agency operating within the U.S.

Department of Justice, during the period of 1986 until 1993, when he was forced to take

disability retirement.  For the purposes of this Complaint, the Plaintiff was either employed by

the USMS or seeking reinstatement with the USMS during all times relevant.

5.      Defendant Alberto Gonzales, sued in his official capacity as U.S. Attorney

General, is the head of the U.S. Department of Justice ("DoJ"), the federal department of which

the USMS is a subordinate agency.  The DoJ is responsible for promulgating regulations and

overseeing the USMS Equal Employment Opportunity Office and for insuring that the USMS

complies with all applicable employment discrimination laws and regulations.

## III. <u>STATEMENT OF FACTS</u>

6.      Plaintiff Phillip Cochran became a Deputy U.S. Marshal ("DUSM") in 1986 after

working for state and local law enforcement for more than ten (10) years.  He worked

successfully in that position, receiving "excellent" ratings in his performance appraisals.

7.      Plaintiff began to experience hearing loss after working for several years as a

2

DUSM and, in 1989, was provided hearing aids by the USMS. The hearing aids improved his hearing

8.      At the time Plaintiff received the hearing aids, the USMS had a policy prohibiting the use of hearing aids during the test used to determine whether DUSM, and other USMS operational personnel, met the USMS medical/physical standards.

9.      In September 1992 while reviewing his periodic medical examination, the USMS medical branch, located in USMS Headquarters, noticed Plaintiff's hearing loss and requested that he undergo additional hearing tests. Plaintiff underwent numerous hearing tests done first by an audiologist and then by an otolaryngologist. He failed to meet the USMS hearing standards in the majority of tests; however, he did meet the hearing standards in at least one test.

10.     Plaintiff was placed on light duty in November 1992. He was restricted from handling prisoners, making arrests, conducting asset seizures, providing protective services, performing duties as a district firearms instructor/range officer and operating USMS vehicles. Plaintiff received a performance review for the April until November 1992 in which his performance was rated as "excellent".

11.     In March 1993, Thomas Mulhern, then Acting Chief of the USMS Employee Relations Division, sent Plaintiff a memorandum stating that Plaintiff's hearing loss"presents a significant risk to yourself and/or others in the work environment." Mr. Mulhern informed Plaintiff that "it will be necessary for you to contemplate voluntary disability retirement." He then informed Plaintiff that, "[i]f you elect not to retire voluntarily, the [USMS] is prepared to propose your removal based on medical unfitness." Plaintiff was also told verbally at the time that if he did not take "voluntary disability retirement", he would be removed from his position.

3

12.     Plaintiff did not want to retire in March 1993. He repeated asked USMS officials about any possible way for him to remain employed as a DUSM. He specifically asked whether new types of hearing aids involving technology that had been developed after he acquired his hearing aids in 1989 could solve the problem. He was informed that, pursuant to USMS policy, he could not use hearing aids.

13.     Before forcing him to retire, the USMS offered no alternative means to accommodate Plaintiff's hearing loss. Joseph Moy, USMS Supervisory Management Personnel Specialist in the Retirement and Benefits Branch, swore that, "[a]t the time the [Plaintiff's] application for disability retirement was filed . . . the possibility of accommodating [Plaintiff] with his hearing loss was not considered."

14.     In the same time period as Plaintiff's involuntary retirement, the USMS accommodated another DUSM who suffered from similar hearing loss. The USMS accommodated Ernest Harris, a DUSM then in Little Rock Arkansas, despite his hearing loss, even going so far as to draft an actual list of possible accommodations that could be utilized to prevent Mr. Harris's separation from the USMS.

15.     Plaintiff submitted his disability retirement application in March 1993. He filled out that form with the help of a management official experienced in helping employees submit successful disability retirement applications. The management official encouraged Plaintiff to emphasize any incidents that might have related to his hearing problems. As a result, Plaintiff included in his retirement application a vivid description of a near-miss in his car, when he apparently did not hear an ambulance entering an intersection at almost the same time he was passing through the intersection in haste to assist a co-worker across town. Plaintiff later

4

provided sworn testimony that he was not certain that his hearing problems entirely caused that
"near miss," but he was advised to emphasize it as a dangerous incident that would enhance his
disability retirement application. Plaintiff's disability retirement was granted and became
effective in June 1993.

16.     Plaintiff's retirement on disability was involuntary. Mr. Moy admitted Plaintiff's
retirement was involuntary in an internal agency memorandum in February 1995.

17.     At the time he was retired, USMS management officials, including Mr. Moy,
USMS Chief Personnel Officer Suzanne Smith, and Shirley Rice, USMS Personnel Officer in the
Retirement and Benefits Branch, told Plaintiff that he did not have recourse to EEO procedures.
He was also told that every other DUSM who wore hearing aids would also be retired.

18.     In proceedings before the Equal Employment Opportunity Commission
("EEOC"), the USMS formally admitted that it regarded Plaintiff as a disabled individual.
Additionally, Richard Kelly, USMS Health and Fitness Branch, testified that USMS management
regarded Plaintiff's need for hearing aids as disqualifying him from all law enforcement
positions.

19.     The USMS formally admitted that Plaintiff had a record of disability in
proceedings before the EEOC.

20.     The USMS also formally admitted that Plaintiff was an individual with a
disability for the purposes of the Rehabilitation Act in proceedings before the EEOC.
Additionally, in the USMS's Final Agency Decision on Plaintiff's disability discrimination
complaint, dated March 15, 2000, the USMS concluded Plaintiff had an impairment that limited
the major life activity of hearing. The USMS Final Agency Decision stated, "[f]or these reasons,

5

the record supports the conclusion that complainant was an individual with a disability and, therefore, protected by the Rehabilitation Act."

21.    In 1994-1995, the USMS changed its policy to allow the use of hearing aids by operational personnel. On December 14, 1994, then-USMS Director Eduardo Gonzalez issued a memorandum in which he announced the change in policy to permit then-current USMS employees to use hearing aids if so doing would allow the employees to meet the hearing standards. On August 14, 1995, the USMS issued Policy Notice No. 95-015 on Hearing Standards and Testing Protocol that included the following: "[f]urther testing with the use of hearing aid(s) may be considered. If effective, their use will be necessary during performance of duties and must be worn to meet this medical standard."

22.    In and around January 1995, the U.S. Department of Labor Office of Workers Compensations Programs ("OWCP") informed Plaintiff that he was no longer considered disabled and that his disability benefits would cease. Plaintiff also discovered that other USMS personnel who had been separated because they wore hearing aids had been reinstated by the USMS.

23.    Plaintiff became aware of the change in USMS policy regarding hearing aids and, in January 1995, sent a letter requesting to be reinstated to his former position as DUSM. Throughout the period of January to June 1995, Plaintiff corresponded and spoke with various agency management officials with the USMS, including USMS Chief Personnel Officer Suzanne Smith, Mr. Moy, and Supervisory DUSM Ronnie O'Neal.

24.    Shortly after his initial communication with the USMS in 1995, Mr. Kelly wrote a memorandum to Ms. Smith in which he stated that, based on Plaintiff's unaided hearing tests

6

taken in 1993, he would not qualify under the new USMS hearing standards. Mr. Kelly made no mention of the possibility of Plaintiff re-testing with hearing aids.

25.    In 1995, the USMS succeeded in rejecting Plaintiff's legitimate request for reinstatement by essentially giving him the run-around. In May, he was told that his request was referred to the USMS "legal department" and was "being reviewed in conjunction with our proposed hearing standard for [DUSM] positions." Since that time, despite his best efforts, Plaintiff has not been granted reinstatement with the USMS.

26.    In April 1995, Plaintiff filed a complaint of disability discrimination based on his hearing loss with the EEOC, not realizing that he should have gone to the USMS EEO Office. Through the EEOC, Plaintiff learned of his mistake and, in June 1995, he contacted the USMS EEO Office to initiate his disability discrimination complaint.

27.    Plaintiff initially contacted the USMS EEO Office with his disability discrimination complaint on June 19, 1995. He had the final interview of his informal complaint on August 31, 1995, and received the notice of right to file a formal complaint on September 13, 1995. Plaintiff filed his formal complaint on September 28, 1995.

28.    The USMS EEO Office conducted its investigation of Plaintiff's disability discrimination complaint in 1999 after it was ordered to do so by the EEOC Office of Federal Operations ("OFO"). After the investigation, Plaintiff elected to have his case heard before the U.S. Merit Systems Protection Board ("MSPB") regarding the constructive discharge. The MSPB found it had no jurisdiction to hear Plaintiff's case. Thereafter, Plaintiff sought a hearing before the EEOC, which hearing occurred in 2004. The EEOC administrative judge found in favor of the agency and Plaintiff appealed timely to the OFO.

7

29.     The EEOC OFO issued its decision in Plaintiffs case on or about December 29, 2005, upholding the administrative judge's decision.  Plaintiff timely requested reconsideration, which was denied on March 10, 2006, which decision is attached to this Complaint as Attachment A.  From that decision, this Complaint is filed.

**COUNT I:  VIOLATION OF THE REHABILITATION ACT OF 1973,
29 U.S.C. § 791
(CONSTRUCTIVE DISCHARGE)**

30.     Plaintiff hereby reasserts and reincorporates the allegations listed in Paragraphs 1-29 above as if fully set forth below.

31.     Pursuant to Section 501 of the Rehabilitation Act, Plaintiff was a qualified individual with a disability, specifically hearing loss, because Defendant regarded him as disabled, had a record of him as disabled and because Plaintiff suffered from a disability. Plaintiff was a qualified individual as demonstrated by the fact that he performed his duties at an excellent level despite his hearing loss, with or without accommodation of hearing aids. Defendant also regarded Plaintiff as being disabled by being substantially limited in his ability to work because it regarded Plaintiff as being unable to work in the broad category of any law enforcement position.

32.     Defendant constructively discharged Plaintiff because of his hearing loss despite the fact that he was performing his duties at an excellent level when it forced Plaintiff to accept disability retirement.  Defendant discriminated against Plaintiff in violation of the Rehabilitation Act by terminating him solely because of his disability and/or perceived disability regardless of whether he could perform the essential functions of their position.

8

33.    Defendant discriminated against Plaintiff because, before constructively discharging Plaintiff, it failed to offer reasonable accommodation for his disability and/or perceived disability as required by the Rehabilitation Act. Defendant also discriminated against Plaintiff by failing to even discuss or entertain reasonable accommodation as required under the Rehabilitation Act prior to constructively discharging him.

34.    Defendant further discriminated against Plaintiff when it constructively discharged him by using qualification standards that screened out disabled individuals in violation of the Rehabilitation Act, 29 U.S.C. § 791.

35.    As a result of Defendant's discriminatory actions in violation of the Rehabilitation Act, Plaintiff suffered significant loss of wages and benefits and compensatory damages including, but not limited to, pain and suffering and mental anguish.

## COUNT II: VIOLATION OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 791 (REFUSAL TO REINSTATE)

36.    Plaintiff hereby reasserts and reincorporates the allegations listed in Paragraphs 1-35 above as if fully set forth below.

37.    In 1995 Defendant altered the hearing standards under which Plaintiff had been constructively discharged in 1993 and established hearing standards that Plaintiff met with the use of his hearing aids. Around that same time, OWCP found that Plaintiff was no longer disabled for the purposes of disability retirement.

38.    Plaintiff diligently sought reinstatement to his position as DUSM as a result of the

9

changed hearing standards and the finding that he was no longer qualified for disability retirement. Nevertheless, Defendant refused to reinstate Plaintiff to his previous position because of Plaintiff's hearing loss which Defendant continued to consider disabling.

39.     Defendant discriminated against Plaintiff in violation of the Rehabilitation Act, 29 U.S.C. § 791, in refusing to consider reinstating Plaintiff because of his hearing loss. Defendant also discriminated against Plaintiff in violation of the Rehabilitation Act by refusing to accommodate Plaintiff's disability, hearing loss, in the process of reinstating him to the DUSM position.

40.     As a result of Defendant's discriminatory actions in violation of the Rehabilitation Act, Plaintiff suffered significant loss of wages and benefits and compensatory damages including, but not limited to, pain and suffering and mental anguish.

## IV. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court:

a)     Assign this case for trial at the earliest practicable date;

b)     Enter judgment against defendant in favor of Plaintiff, declaring Defendant's conduct to be in violation of Section 501 of the Rehabilitation Act, 29 U.S.C. § 791;

c)     Award Plaintiff back pay, front pay and compensatory damages for the pain and suffering the Plaintiff experienced as a result of the Defendant's discriminatory actions;

d)     Award Plaintiff his reasonable attorneys fees and costs for this action; and

e)     Award Plaintiff all other legal or equitable relief to which he may be entitled.

10

## V. __REQUEST FOR JURY TRIAL__

Plaintiff hereby requests a jury trial.


Respectfully Submitted,


Leslie Deak [PA0009]
Law Offices of Leslie Deak
1200 G Street, N.W.
Suite 800, No. 099
Washington, D.C. 20005
Tel.:    (512) 322-3911
Fax:    (512) 322-3910

ATTORNEY FOR PLAINTIFF

11